UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jeffery L. Dunaway,

    Plaintiff,

v.

City of Cincinnati., *et al.*,

    Defendants.

Case No. 1:17cv801

Judge Michael R. Barrett

## OPINION & ORDER

This matter is before the Court upon the Motion for Judgment on the Pleadings filed by Defendants City of Cincinnati, Harry Black, City of Cincinnati City Manager, and Eliot Isaac, the City of Cincinnati Chief of Police. (Doc. 8). Plaintiff filed a Response in Opposition (Doc. 10), and Defendant filed a Reply (Doc. 12). In addition, the Court held oral argument on Defendants' Motion on May 7, 2018.

### I.    BACKGROUND

Plaintiff has been a City of Cincinnati police officer since February of 1993. (Doc. 1, ¶ 9). In July of 2009, Plaintiff was diagnosed with stage-four prostate cancer. (Id., ¶ 10). As part of his treatment, Plaintiff underwent surgery in September of 2009. (Id.) Plaintiff returned to work in October of 2009. (Id., ¶ 11). On January 18, 2015, Plaintiff was promoted to Sergeant and assigned to District Five. (Doc. 1, Ex. A). Plaintiff alleges that the District Five headquarters is widely regarded as a "cancer cluster" because police officers stationed there have been diagnosed with various forms of cancer. (Doc. 1, ¶ 24). Plaintiff alleges further that Black announced that any officers assigned to District Five could be transferred upon request. (Id., ¶ 29).

Despite keeping the information about his prostate cancer private, Plaintiff was asked about his prostate cancer and recovery by the father of a teammate on his son's baseball team. (Id., ¶ 15). This individual explained that his brother is a Cincinnati police officer, and he was able to look up Plaintiff's medical information on the police department's internal website. (Id., ¶¶ 16-17). Plaintiff checked the website himself and confirmed that virtually any employee within the police department could view the highly-sensitive personal medical information of every police officer. (Id., ¶ 17-19).

Because Plaintiff considered this to be a matter of great public concern, he raised this issue within the police department's command structure in the summer of 2016. (Id., ¶ 21).

On January 10, 2017 Plaintiff, made a written request that he be considered for a day-shift assignment. (Doc. 8-2). Plaintiff stated, "I respectfully request consideration for a day shift position anywhere in the police department." (Id.) Plaintiff's request explained:

> On April 5, 2016 I discovered the Police Department had made my personal medical history readily available to virtually any employee within the Police Department. I am convinced this was not done maliciously, however; this mistake created a serious hardship for my family, especially my young children.
>
> I have been working a day shift position since June 1, 2016 and these work hours have been a huge help correcting the problem caused by releasing my personal medical history.

(Id.) Plaintiff's request was approved by Isaac. (Id.) However, because there was no opening for a day-shift sergeant at the time of his request, Plaintiff was required to wait for his preferred assignment. (Id.)

On March 4, 2017, Plaintiff made a written request to be transferred from District Five to District One. (Doc. 8-3). This request was denied by Isaac. (Id., ¶ 32). Plaintiff

2

claims that Black and Isaac retaliated against him for making complaints about the release of officer's medical information.

Plaintiff claims violations of his constitutional rights under 42 U.S.C. § 1983: (1) violation of substantive due process; (2) invasion of privacy; and (3) violation of right to free speech.

## II. ANALYSIS

### A. Motion for Judgment on the Pleadings

The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead "sufficient factual matter" to render the legal claim plausible, *i.e.*, more than merely possible. *Id.* (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-950 (2009)). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 556 (2007)).

### B. Section 1983

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must prove two elements:

(1) the plaintiff was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law. *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (citing *Marcilis v. Twp. of Redford*, 693 F.3d 589, 595 (6th Cir. 2012)).

   1. **<u>Substantive Due Process</u>**

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1.

Plaintiff explains that his substantive due process claim is based on Defendants' refusal to transfer him—a cancer survivor—out of a "cancer cluster" in retaliation for complaining about the release of officer's highly-confidential personal medical information. Plaintiff argues that Defendants' refusal to transfer Plaintiff is an act which "shocks the conscience."

Substantive due process ensures "freedom from government actions that 'shock the conscience.'" *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 250 (6th Cir. 2003)). As the Sixth Circuit has explained:

> Over the years, the courts have used several tropes to explain what it means to shock the conscience. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Conduct shocks the conscience if it "violates the 'decencies of civilized conduct.'" *Id.* at 846, 118 S.Ct. 1708 (quoting *Rochin v. California*, 342 U.S. 165, 172-73, 72 S.Ct. 205, 96 L.Ed. 183 (1952)). Such conduct includes actions "so 'brutal' and 'offensive' that [they do] not comport with traditional ideas of fair play and decency." *Id.* at 847, 118 S.Ct. 1708 (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957)). These are subjective standards, to be sure, but they make clear that the "shocks the conscience" standard is not a font of tort law, but is instead a way to conceptualize the sort of egregious behavior that rises to the level of a substantive due process violation. *See id.* at 847–48, 118 S.Ct. 1708.

*Id.* at 589-590.

4

To the extent that Plaintiff's claim is based upon the City's refusal to transfer Plaintiff out of a "cancer cluster," substantive due process does not create a duty on the part of a government employer to provide its employees with a safe work environment. *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992). It also does not impose an affirmative obligation to ensure minimal levels of safety and security. *Id.* at 129. The Supreme Court has made it clear that the Due Process Clause should not be interpreted "to impose federal duties that are analogous to those traditionally imposed by state tort law." *Id.* at 128. As such, the Due Process Clause does not guarantee against "incorrect or ill-advised personnel decisions." *Id.* at 129.

To the extent that Plaintiff's claim is based on his complaints about the release of the officer's medical information, "what is allegedly shocking about what the defendants' did [sic] is ... their intent to violate plaintiff's fundamental First Amendment rights." *Handy–Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 547 (6th Cir. 2012). As the Sixth Circuit has explained, a claim cannot be asserted under "the more generalized notion of substantive due process" if a specific constitutional amendment "provides an explicit source of constitutional protection." *Id.* Because there is an enumerated constitutional right available as a source of protection—the First Amendment—Plaintiff has failed to allege a claim for substantive due process. *Accord Handy-Clay*, 695 F.3d at 548 (plaintiff fails to state substantive due process claim based on allegation that supervisors grossly abused their authority by terminating her after her repeated complaints about malfeasance and corruption); *see also Hinton v. Conner*, 366 F. Supp. 2d 297 (M.D. N.C. 2005) (plaintiff fails to state substantive due process claim based on allegation that city terminated her for her criticism of funds disbursements operation, because it was

5

duplicative of her First Amendment claim). Therefore, Defendants Motion for Judgment on the Pleadings is GRANTED as to Plaintiff's substantive due process claim.

### 2. **First Amendment**

The Supreme Court has explained that following framework applies to First Amendment claims brought by public employees based on the freedom of speech:

> When a public employee sues a government employer under the First Amendment's Speech Clause, the employee must show that he or she spoke as a citizen on a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). If an employee does not speak as a citizen, or does not address a matter of public concern, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Ibid*. Even if an employee does speak as a citizen on a matter of public concern, the employee's speech is not automatically privileged. Courts balance the First Amendment interest of the employee against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

*Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 386, 131 S. Ct. 2488, 2493, 180 L. Ed. 2d 408 (2011).

A court determines as a matter of law whether a public employee engaged in constitutionally-protected speech. *Farhat v. Jopke*, 370 F.3d 580, 593 (6th Cir. 2004). A court examines the speech's content, not the speaker's motivation, when determining its focus. *Handy-Clay v. City of Memphis*, 695 F.3d 531, 543-44 (6th Cir. 2012). "[T]he subjective intent of the speaker, while relevant, is not a controlling factor." *Banks v. Wolfe Cty. Bd. of Educ.*, 330 F.3d 888, 894 (6th Cir. 2003). Therefore, "[m]ixed questions of private and public concern, where the employee is speaking both as a citizen as well as an employee, can be protected." *Id*. (citing *Vaughn Lawrenceburg Power Sys.*, 269 F.3d 703, 716 (6th Cir. 2001) and *Bonnell v. Lorenzo*, 241 F.3d 800, 812 (6th Cir. 2001)

6

("although aspects of Plaintiff's speech involve matters of personal interest where he is speaking regarding a personal grievance as an employee, his speech also involved matters of public interest such that Plaintiff is speaking as a concerned citizen")).

"[S]peech is of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of general interest and of value and concern to the public.'" *Snyder v. Phelps*, 562 U.S. 443, 444, 131 S. Ct. 1207, 1211, 179 L. Ed. 2d 172 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690, 75 L. Ed. 2d 708 (1983) and *San Diego v. Roe*, 543 U.S. 77, 83–84, 125 S.Ct. 521, 160 L.Ed.2d 410 (2004)). As the Sixth Circuit has explained:

> Our court has elucidated the distinction between matters of public concern and personnel matters. Although government effectiveness and efficiency could generally be considered a matter of public concern, we have found mere assertions of incompetence and poor management decision-making to be run-of-the-mill employment disputes—particularly when the recommended course of action would benefit the employee. *See Rahn v. Drake Center, Inc.*, 31 F.3d 407, 413 (6th Cir. 1994); *Barnes v. McDowell*, 848 F.2d 725, 734–35 (6th Cir. 1988). In contrast, speech addresses a matter of public concern when it alleges corruption and misuse of public funds, *Chappel v. Montgomery Cnty. Fire Protection Dist. No. 1*, 131 F.3d 564, 576–77 (6th Cir. 1997); failure to follow state law, *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 896–97 (6th Cir.2003); major state policy decisions, *Jackson v. Leighton*, 168 F.3d 903, 910 (6th Cir.1999); or discrimination of some form, *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 181–82 (6th Cir. 2008).

*Boulton v. Swanson*, 795 F.3d 526, 532 (6th Cir. 2015).

Defendants argue that Plaintiff's speech was pursuant to his official duties as an employee, rather than a public citizen. Defendants explain that Plaintiff was requesting a transfer, which dealt solely with personnel matters and did not involve a matter of public concern. Plaintiff responds that his constitutionally-protected speech consisted of his

complaint about "Defendants' illegal invasion of his privacy, and the privacy of fellow Cincinnati police officers, resulting from Defendants' inappropriate posting of Plaintiff's and other police officers' confidential medical histories on the Police Department's internal website." (Doc. 1, ¶ 48). Plaintiff argues that he raised these issues in his capacity as a private citizen, and these issues were matters of public concern.

The Court concludes that Plaintiff was not speaking on a matter of public concern because Plaintiff's speech did not fall within any of the categories of speech which have been found to be matters of public concern: corruption or misuse of public funds; failure to follow state law; major state policy decisions; or discrimination. Instead, Plaintiff was raising a personnel matter on behalf of himself and other officers. Such employment disputes—even when brought on behalf of other employees—have not been found to be matters of public concern. *See Van Compernolle v. City of Zeeland*, 241 F. App'x 244, 250 (6th Cir. 2007) (participation in other officers' grievance procedures was not a matter of public concern). Moreover, Plaintiff's speech was focused on information which was only available on an internal website. While Plaintiff has alleged that his personal medical information was made public, Plaintiff has not cited any other instances where an officer's information was disclosed outside the police department. This speech cannot be "fairly considered as relating to any matter of political, social, or other concern to the community."

Therefore, Plaintiff has not stated a claim for a violation of his freedom of speech; and Defendants Motion for Judgment on the Pleadings is GRANTED as to Plaintiff's First Amendment claim.

### 3. <u>**Constitutional right to privacy**</u>

Defendants argue that Plaintiff's private medical information about his prostate cancer is not constitutionally protected.

"[T]he Sixth Circuit has held that the Constitution does not encompass a general right to nondisclosure of private information." *Wilson v. Collins*, 517 F.3d 421, 429 (6th Cir. 2008). Instead, the Sixth Circuit has interpreted privacy claims as follows:

> The substantive due process clause protects two types of privacy rights. *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977): (1) an individual's right to make "personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education." *Lawrence v. Texas*, 539 U.S. 558, 574, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003); and (2) an individual's "interest in avoiding disclosure of personal matters." *Whalen*, 429 U.S. at 599, 97 S.Ct. 869; *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1060 (6th Cir. 1998).

*Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 590 (6th Cir. 2008). The Sixth Circuit has narrowly construed this second category, which it calls the "informational right to privacy." *Moore v. WesBanco Bank, Inc.*, 612 F. App'x 816, 822 (6th Cir. 2015) (citing *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008)). This right to privacy extends "only to interests that implicate a fundamental liberty interest." *Id*. The Sixth Circuit has "recognized an informational-privacy interest of constitutional dimension in only two instances: (1) where the release of personal information could lead to bodily harm, and (2) where the information released was of a sexual, personal, and humiliating nature." *Id*. Therefore, the decisions from the Second Circuit cited by the parties are inapposite in light of the Sixth Circuit's narrow construction of the Supreme Court's precedent regarding informational privacy. Plaintiff has not alleged that the release of his medical information could lead to bodily harm, and the information released was not of a sexual, personal,

9

and humiliating nature.[1]

With regard to the dissemination of medical information, the Sixth Circuit has explained that:

> "a person possesses no reasonable expectation that his medical history will remain completely confidential[;] [t]his is not to say that a person has no interest in protecting, to some extent, the confidentiality of his medical records." *In re Zuniga*, 714 F.2d 632, 641 (6th Cir. 1983) (citing *Whalen*, 429 U.S. at 606–07, 97 S.Ct. 869). However, under our interpretation of privacy rights, we have not yet confronted circumstances involving the disclosure of medical records that, in our view, are tantamount to the breach of a "fundamental liberty interest" under the Constitution.

*Lee v. City of Columbus, Ohio*, 636 F.3d 245, 260-61 (6th Cir. 2011).

Even if the disclosure alleged by Plaintiff could be said to implicate a fundamental interest, "the government's interest in disseminating the information must be balanced against the individual's interest in keeping the information private." *Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998). The disclosure of information "will be upheld under the substantive due process component of the Fourteenth Amendment only where the governmental action furthers a compelling state interest." *Id.* at 686 (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1064 (6th Cir.1998)). At oral argument, the City explained that an officer's medical information is available to supervisors when an officer is off work, or on restricted duties for reasons such as for an illness, injury or surgery. The City explained that supervisors need access to this information for scheduling and manpower allocation. Where the need for the information is legitimate, disclosure does

---

[1] Plaintiff has described the medical information which was disclosed as being "personal" and "private," but in *Bloch v. Ribar*, the Sixth Circuit recognized the constitutional right to informational privacy in the context of "private sexual matters." The court determined that the plaintiff had a fundamental right "to prevent the dissemination of confidential and intimate details of a rape." 156 F.3d 673, 686 (6th Cir. 1998). The medical information in this case is not of the same constitutional dimension.

10

not constitute an invasion of the right to privacy. See *Gutierrez v. Lynch*, 826 F.2d 1534, 1539 (6th Cir. 1987). Moreover, the disclosure of the information was limited. The information was not disclosed to the general public, but as Plaintiff has alleged, the information "was available to virtually any employee of the City of Cincinnati Police Department through its internal website." (Doc. 1, ¶ 42). It was not available to all police department employees, and was contained on an internal website with limited access. Therefore, even if the Court were to find that Plaintiff had alleged an informational-privacy interest of constitutional dimension, Defendants had a compelling interest in disclosing that information. As a result, Plaintiff has not stated a claim for a violation of his constitutional right to privacy; and Defendants Motion for Judgment on the Pleadings is GRANTED as to Plaintiff's right to privacy claim under Section 1983.

### 4. Invasion of privacy under Ohio law

Plaintiff claims an invasion of privacy by publication of private facts under Ohio law. Plaintiff's claim is based upon Defendants' disclosure of his prostate cancer and cancer surgery, and other matters of his medical history.

To recover for the tort of invasion of privacy by publication of private facts, the following elements must be shown: (1) that there has been a public disclosure; (2) that the disclosure was of facts concerning the private life of an individual; (3) that the matter disclosed would be highly offensive and objectionable to a reasonable person of ordinary sensibilities; (4) that the disclosure was intentional; and (5) that the matter publicized is not of legitimate concern to the public. *Killilea v. Sears, Roebuck & Co.*, 27 Ohio App.3d 163, 167, 499 N.E.2d 1291, 1294 (Ohio 1985).

Defendants argue that Plaintiff's claim fails because he has not alleged that there

has been a public disclosure. Defendants maintain that Plaintiff's medical information was kept in an internal database, and was not disclosed to the public.

In the context of a claim for invasion of privacy by publication of private facts, the term "publicity" means "communicating the matter to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge as opposed to 'publication' as that term of art is used in connection with liability for defamation as meaning any communication by the defendant to a third person." *Killilea*, 27 Ohio App.3d 166, 499 N.E.2d 1291.

Plaintiff maintains that his private medical history became a matter of public knowledge. Plaintiff points to the allegations in the Complaint that he was approached by the father of a teammate on his son's baseball team, who asked Plaintiff about his prostate cancer and recovery. (Doc. 1, ¶ 15). Plaintiff explains that this shows that his medical information had been disseminated outside of the police department to at least one individual.

Ohio courts have focused on "the character of the communications, and the likelihood that they would become public knowledge," rather than placing weight solely on "the number of persons to whom the disclosures were initially made." *Roe ex rel. Roe v. Heap*, 2004 WL 1109849, *13 (Ohio Ct. App. 2004) (citing *Roberts v. Hagen*, No. 2845-M, 2000 WL 150766, at *3 (Ohio Ct. App. Feb. 9, 2000)). For example email communications about a diving coach sent by a parent to "a handful" officials at the national governing body for the sport were not public disclosures. *Id.* Here, Plaintiff has not alleged that Defendants publicized his medical information to the public at large. There is also nothing in the allegations which make it substantially certain that the medical

information will become public knowledge. Plaintiff has only identified one person outside the police department who learned about his prostate cancer.

Therefore, Plaintiff has not stated a claim for an invasion of privacy under Ohio law; and Defendants Motion for Judgment on the Pleadings is GRANTED as to Plaintiff's claim for invasion of privacy.

### C. Individual liability

Plaintiff named Black and Isaac in both their official and individual capacity. However, because Plaintiff has failed to state a claim based on the allegations in the Complaint, the Court finds it unnecessary to address whether Black and Isaac are entitled to qualified immunity or statutory immunity under Ohio Revised Code § 2744.03.

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that the Motion for Judgment on the Pleadings filed by Defendants City of Cincinnati, Harry Black, City of Cincinnati City Manager, and Eliot Isaac, the City of Cincinnati Chief of Police (Doc. 8) is **GRANTED**. This matter shall be **CLOSED and TERMINATED** from the active docket of this Court.

**IT IS SO ORDERED.**

            */s/ Michael R. Barrett*
            JUDGE MICHAEL R. BARRETT